

FILED
CLERK, U S DISTRICT COURT

*FILED*

MAR - 4 2004

3-4-04

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

Priority
Send
Clsd
Enter
JS-5/JS-6
JS-2/JS-3
Scan Only

SCANNED

ENTERED
CLERK, U.S. DISTRICT COURT

MAR - 5 2004

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATRICE WELLES, an individual, | Case No. CV 03-05314 DDP (JTLx) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California non-profit corporation; | [Plaintiff's motion filed on 1/27/04; Defendant's motion filed on 1/23/04] |
| Defendant, | |
| AND RELATED COUNTERCLAIM. | |

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).

This matter comes before the Court on the parties' cross-motions for summary judgment.  After reviewing the materials submitted by the parties, and hearing oral argument, the Court grants in part and denies in part the plaintiff's motion, and denies the defendant's motion.

I.    **Background**

The Court recites the following undisputed facts.  The plaintiff Beatrice Welles ("Welles") is the daughter of George Orson Welles, professionally known as Orson Welles.  (Welles Decl.

1  ¶ 2.)  In 1942, the defendant Academy of Motion Picture Arts and

2  Sciences (the "Academy") awarded Orson Welles an Academy Award for

3  Best Original Screenplay for the 1941 film <u>Citizen Kane</u> (the

4  "original Oscar").  (<u>Id.</u> ¶ 3.)  After Orson Welles died, the right

5  of ownership to the original Oscar passed to his wife, Paola Mori

6  Welles.  (Brown Decl. Ex. 3.)  After Mrs. Welles died, the right of

7  ownership to the original Oscar passed to her daughter, the

8  plaintiff in the current action.  (<u>Id.</u>, Ex. 4.)

9       In 1988, Welles requested a duplicate Oscar from the Academy,

10 stating in a letter to the defendant that her father "lost [the

11 original Oscar] and others many years ago through his extensive

12 travelling . . .."  (<u>Id.</u>, Ex. 1.)  The Academy provided her with a

13 duplicate, and she signed the "Receipt for Academy Award Statuette"

14 ("Receipt").  (<u>Id.</u>, Ex. 2; Quinto Decl. Ex. K.)  The document

15 reads:

16      Gentlemen:
        I hereby acknowledge receipt from you of replica No.
17      <u>2527*</u> of your copyrighted statuette, commonly known as
        the "Oscar", as an award for <u>Orson Welles, Original</u>
18      <u>Screenplay - "Citizen Kane"</u>.  I acknowledge that my
        receipt of said replica does not entitle me to any right
19      whatever in your copyright, trade-mark and service mark
        of said statuette and that only the physical replica
20      itself shall belong to me.  In consideration of your
        delivering said replica to me, I agree to comply with
21      your rules and regulations respecting its use and not to
        sell or otherwise dispose of it, nor permit it to be sold
22      or disposed of by operation of law, without first
        offering to sell it to you for the sum of $1.00.  You
23      shall have thirty days after any such offer is made to
        you within which to accept it.  This agreement shall be
24      binding not only on me, but also on my heirs, legatees,
        executors, administrators, estate, successors and
25      assigns.  My legatees and heirs shall have the right to
        acquire said replica, if it becomes part of my estate,
26      subject to this agreement.

27                          [/s/ Beatrice Welles-Smith]
                             BEATRICE WELLES-SMITH
28      *Duplicate Oscar

                              2

> Any member of the Academy who has heretofore received any Academy trophy shall be bound by the foregoing receipt and agreement with the same force and effect as though he or she had executed and delivered the same in consideration of receiving such trophy.

The paragraph below the plaintiff's signature on the receipt is called the "addendum" by the parties.  The Court adopts this term.

In 1994, Welles discovered the whereabouts of the original Oscar and successfully obtained a judgment declaring her the rightful owner.  (Brown Decl. Ex. 5; Quinto Decl. Ex. H.)  In 2003, Welles decided that she wanted to sell the original Oscar through public auction at Christie, Manson & Woods International ("Christie's").  In June 2003, Christie's corresponded with attorneys for the Academy.  The Academy informed Christie's that it would object to the sale of the original Oscar.  (Brown Decl. Ex. 6.)  Christie's responded that it would withdraw the original Oscar from auction pending the resolution of the dispute between the plaintiff and the defendant.  (Id., Ex. 7.)

On June 16, 2003, Welles filed a complaint against the Academy seeking rescission and a judicial declaration as to the parties' rights and obligations under the receipt.  (Compl. at 3.)  On July 7, 2003, the defendant filed its answer and counterclaim against the plaintiff, alleging breach of contract, declaratory relief, and breach of equitable servitude.  (Def's Answer.)  On July 31, the plaintiff filed a motion for summary judgment, which the Court denied on September 24, 2003.  The plaintiff filed the instant motion for summary judgment on its first amended complaint.

1 | **II.   Discussion**

2 |     A.   <u>Legal Standard</u>

3 |     Summary judgment is appropriate where "the pleadings,

4 | depositions, answers to interrogatories, and admissions on file,

5 | together with the affidavits, if any, show that there is no genuine

6 | issue as to any material fact and that the moving party is entitled

7 | to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

8 |     In determining a motion for summary judgment, all reasonable

9 | inferences from the evidence must be drawn in favor of the

10 | nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

11 | 255 (1986).  A moving party who bears the burden of proof at trial

12 | is entitled to summary judgment only when the evidence indicates

13 | that no issue of material fact exists.  <u>Celotex Corp. v. Catrett</u>,

14 | 477 U.S. 317, 325 (1986).  If the moving party does not bear the

15 | burden of proof at trial, he is entitled to summary judgment if he

16 | can demonstrate that "there is an absence of evidence to support

17 | the nonmoving party's case."  <u>Id.</u>

18 |     Once the moving party meets its burden, the burden shifts to

19 | the nonmoving party resisting the motion for summary judgment, who

20 | must "set forth specific facts showing that there is a genuine

21 | issue for trial."  <u>Anderson</u>, 477 U.S. at 256.  It is not enough for

22 | a party opposing summary judgment to "rest on mere allegations or

23 | denials of his pleadings."  <u>Id.</u> at 259.  Instead, the nonmoving

24 | party must go beyond the pleadings to designate specific facts

25 | showing that there is a genuine issue for trial.  <u>Celotex</u>, 477 U.S.

26 | at 325.  The nonmoving party need not produce evidence in a form

27 | that would be admissible at trial in order to avoid summary

28 | judgment.  <u>Id.</u> at 324.

1     A genuine issue exists if "the evidence is such that a

2 reasonable jury could return a verdict for the nonmoving party,"

3 and material facts are those "that might affect the outcome of the

4 suit under the governing law." <u>Anderson</u>, 477 U.S. at 248.  Thus,

5 the "mere existence of a scintilla of evidence" in support of the

6 nonmoving party's claim is insufficient to defeat summary judgment.

7 <u>Id.</u> at 252.

8     There is no genuine issue of fact "[w]here the record taken as

9 a whole could not lead a rational trier of fact to find for the

10 non-moving party." <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>

11 <u>Corp.</u>, 475 U.S. 574, 587 (1986).  Disputed issues of fact are

12 resolved against the moving party.  <u>General Elec. Co. v. Joiner</u>,

13 522 U.S. 136, 142 (1997).

14     B.   <u>Application</u>

15          1.   <u>Rescission Based on Mistake</u>

16     Welles moves for summary judgment on her rescission claim.

17 She seeks rescission of the entire 1988 contract (the "Receipt"),

18 asserting that she made a unilateral mistake as to the Academy's

19 intentions when she signed the Receipt.  (Pl's mot. at 13.)  In the

20 alternative, she argues that she and the Academy were mutually

21 mistaken in thinking that the original Oscar was "irretrievably

22 lost."[1]  (<u>Id.</u>)

23     The grounds for rescission are stated in California Civil Code

24 § 1689.  One such ground is when consent to a contract is given by

25 ————————————

26 [1]  The defendant did not move for rescission based on mistake until oral argument after receiving the Court's tentative ruling.

27 The Court declined to grant the defendant leave to change its pleading at that late date.  Accordingly, the Court does not

28 address whether the defendant could rescind the contract based on unilateral mistake.

1  mistake.  The term "mistake" however, is a legal term with legal

2  meaning.  The type of "mistake" that will support rescission is

3  defined in California Civil Code §§ 1577 (mistake of fact) and 1578

4  (mistake of law).  Welles claims that the mistake at issue is one

5  of fact.  (Pl's mot. at 14.)  California Civil Code defines a

6  mistake of fact as

7          a mistake, not caused by the neglect of a legal duty on
           the part of the person making the mistake, and consisting
8          in:
           1. An unconscious ignorance or forgetfulness of a fact
9          past or present, material to the contract; or,
           2. Belief in the present existence of a thing material to
10         the contract, which does not exist, or in the past
           existence of such a thing, which has not existed.

11

12  Cal. Civ. Code § 1577.  Thus, a legally cognizable factual mistake

13  consists of an unconscious ignorance of a past or present fact, or

14  a belief in the past or present existence of a thing which does not

15  exist.

16         Welles argues that she made a unilateral mistake as to what

17  the Academy intended the Receipt to cover.  She asserts that she

18  thought the contract covered only the duplicate Oscar, while the

19  Academy thought the contract covered both the duplicate and the

20  original Oscars.  (Pl's mot. at 14.)  This "mistake" cannot give

21  rise to a claim for rescission because it is not a mistake of fact.

22  A mistake of fact generally consists of (1) an error as to the

23  nature of the transaction; (2) an error as to the identity of a

24  person contracted with; (3) an error as to the identity of the

25  thing to which the contract relates; and (4) an error as to a

26  collateral matter.  Rest. Contr. § 502, comment e.  Here, the

27  parties agree that the Receipt gives the Academy the right of first

28  refusal in the duplicate Oscar.  The parties agree that the

1 addendum refers to Oscars previously received by "any member of the

2 Academy." The parties agree that Welles was never a member of the

3 Academy, and never received an Oscar from the Academy. Thus, the

4 relevant factual issues are not disputed.

5    The only real disagreement is whether the addendum applies to

6 Welles's original Oscar. Welles and the Academy may have had

7 differing subjective intents as to the applicability of the

8 addendum to Welles. However, courts will not declare rescission

9 based on undisclosed subjective interpretation of a contract. See

10 Hedging Concepts, Inc. v. First Alliance Mortgage Co., 41 Cal. App.

11 4th 1410, 1421 (1996) (finding that such a rule would "conflict

12 with the objective theory of enforceable contracts"). A contract

13 will be enforced according to its terms. Here, the Court must

14 consider the terms of the contract and relevant parole evidence. A

15 party's mistake as to the other party's subjective intent is, in

16 itself, not a ground for rescission.

17    Welles also argues that the parties made a mutual mistake of

18 fact in that they both thought that the original Oscar was

19 "irretrievably missing." (Mot. at 15.) Welles argues that because

20 the original Oscar was recovered several years later, the contract

21 should be rescinded. (Id.) A mistake of fact consists of an

22 unconscious ignorance of a past or present fact, or a belief in the

23 past or present existence of a thing which does not exist. See

24 Cal. Civ. Code § 1577. Thus, the mistake must be of a fact past or

25 present. A contract cannot be rendered a mistake by subsequent

26 events, absent evidence that a future contingency was an assumption

27 of the contract. Mosher v. Mayacamas Corp., 215 Cal. App. 3d 1, 5

28 (1989); see also Odorizzi v. Bloomfield Sch. Dist., 246 Cal. App.

7

1  2d 123, 129 (1966).  Here, Welles argues that her future recovery

2  of the original statuette evidenced the mistake of fact upon which

3  the contract was based.  However, Welles's recovery of the original

4  Oscar was an event subsequent to the formation of the contract, and

5  thus cannot form the basis for rescission.  Furthermore, Welles

6  offers no evidence that the possible recovery of the Oscar was a

7  contingency that the parties considered and contracted for.

8  Accordingly, the Court finds that the contract cannot be rescinded

9  based on mistake of fact.

10            2.    Reformation Based on Mistake

11       Welles and the Academy move for summary judgment on the

12  Academy's counterclaim for reformation.  The Academy bears the

13  burden of proof on this claim.  Thus, Welles is entitled to summary

14  judgment if she shows that there is an absence of evidence to

15  support the Academy's claim.  The Academy is entitled to summary

16  judgment if it shows that no issue of material fact exists.

17       The Academy seeks reformation of the Receipt.  (Def's mot. at

18  8.)  It argues that the wording "member of the Academy" in the

19  addendum is a technical error that arose from the Academy's use of

20  a form agreement in Welles's unique situation.  (Id. at 11.)  The

21  Academy argues that the Receipt should be reformed to capture the

22  Academy's "true" intent – to bar the resale of all Oscars

23  regardless of the membership status of the recipient.  (Id.)

24  Welles responds that there is no evidence that, at the time she

25  signed the Receipt, she knew or suspected that the Receipt was

26  meant to cover the original Oscar.  (Pl's opp. at 8.)

27       A written contract, once executed, carries with it a legal

28  presumption that it correctly expresses the intention of the

8

1 parties.  <u>California Trust Co. v. Cohn</u>, 9 Cal. App. 2d 33, 40

2 (1935).  The presumption may be overcome by evidence that the

3 agreement as written was not in accordance with the intent of the

4 parties.  <u>Id.</u>  The burden is on the party seeking to avoid the

5 terms of the contract, and is rendered more difficult by the rule

6 that the evidence that is relied upon to establish the existence of

7 mistake as a ground for reformation must be "clear and convincing

8 and not loose, equivocal or contradictory, leaving the question of

9 . . . mistake in doubt."  <u>Id.</u>

10     California law allows for the reformation of a contract in

11 limited circumstances:

12     When, through fraud or a mutual mistake of the parties,
or a mistake of one party, which the other at the time
13     knew or suspected, a written contract does not truly
express the intention of the parties, it may be revised
14     on the application of a party aggrieved, so as to express
that intention, so far as it can be done without
15     prejudice to rights acquired by third persons, in good
faith and for value.

16

17 Cal. Civ. Code § 3399.  Where one party claims that a contract was

18 entered into pursuant to a unilateral mistake, in order to be

19 granted reformation, that party must prove that the other party

20 knew of or suspected the mistake at the time the contract was

21 executed.

22     The Academy asserts that it committed a unilateral mistake by

23 using the form Receipt that contained the addendum concerning

24 "members" in its agreement with Welles, a nonmember.  The burden is

25 on the Academy to show that Welles knew or suspected the Academy's

26 mistake – namely, that the Academy intended that the addendum apply

27 to her.  To be awarded summary judgment, the Academy must show that

28 no issue of material fact exists as to Welles's knowledge regarding

1  the Academy's mistake at the time of the agreement.   See <u>Celotex</u>,

2  477 U.S. at 325.

3           a.   <u>Welles's Knowledge or Suspected Knowledge</u>

4       Reformation of the Receipt because of the Academy's unilateral

5  mistake is not available unless Welles knew of or suspected the

6  mistake at the time the Receipt was executed.   <u>City of Cypress v.</u>

7  <u>New Amsterdam Cas. Co.</u>, 259 Cal. App. 2d 219, 225 (1968).   In the

8  absence of Welles's actual knowledge of or suspicion of the

9  mistake, there is no mutual intention of the parties for the

10  Receipt to express.   See <u>La Mancha Dev. Corp. v. Sheegog</u>, 78 Cal.

11  App. 3d 9, 16-17 (1978).

12       The Academy offers testimony from Welles's deposition to

13  support its claim that she knew or suspected that the addendum

14  applied to her.   The Academy points to the following testimony:

15       Q: Do you understand [the addendum] as referring only to
         duplicate or replacement Oscars?
16       A: No.
         Q: Do you understand [the addendum] as referring to
17       original Oscars?
         A: I assume both, any.

18

19  (Quinto Decl., Ex. I at 152:13-19.)

20       Q: Can you think of any reason why the Academy would
         differentiate between members and nonmembers with respect
21       to permitting the sale of Oscars?
         A: No. I didn't think about it at all.

22

23  (<u>Id.</u>, Ex. I at 162:10-14.)   The Academy also offered portions of

24  Welles's testimony relating to her thoughts "as she sits here

25  today" about whether it is logical for the Academy to distinguish

26  between members and nonmembers.   (Mot. at 10.)

27       The Court is unconvinced by the Academy's evidence.   The

28  Academy does not show that Welles's views on the Receipt at her

                                      10

1 deposition in 2003 were in any way the same as her thoughts about

2 the Receipt at the time of its execution in 1988.  To the contrary,

3 Welles offers the following deposition testimony:

> 4    Q: Did you think that by sending you a form the Academy
>       might have made a mistake; that they used – sent you a
> 5    form intended for members?
>       A: No, didn't cross my mind.
> 6    Q: Why did you think the Academy would want to prohibit
>       members, but nonmembers from selling Oscars without first
> 7    offering them to the Academy?
>       A: It didn't cross my mind.  I don't – I didn't think
> 8    about it.

9 (Brown Decl., Ex. 17 at 145:10-20.)  Welles offers evidence that

10 she did not think that the addendum applied to her because she was

11 not a member of the Academy.  Welles testified that she viewed the

12 addendum as "information to the members of the Academy."  (Id., Ex.

13 17 at 149:3-5.)  She offers affirmative evidence that she did not

14 have knowledge of the mistake at the time of the execution of the

15 Receipt.

16     The Academy also argues that the Court must look beyond

17 Welles's "self-serving statements regarding her intent" when she

18 entered into the contract.  The Court can consider circumstantial

19 evidence.  See Baines v. Zuieback, 84 Cal. App. 2d 483, 490 (1948).

20 However, this situation is unlike Baines, on which the Academy

21 relies.  In Baines, the court found that the appellant and appellee

22 had entered into an oral agreement regarding the terms of a

23 sublease, and that an attorney drew up a contract that purported to

24 incorporate the terms of the agreement.  Id.  The court found that

25 the contract failed to incorporate all the relevant terms, and that

26 the appellant knew of the error but failed to tell the appellee.

27 Id.  Accordingly, the court held that the contract should be

28 reformed.  Id.  The instant case is readily distinguishable.  In

1  the present case, circumstantial evidence does not support the

2  Academy's claim that Welles knew of or suspected an error in the

3  Receipt.   The Academy sent the form Receipt to Welles when she

4  requested the duplicate.   The parties did not negotiate the terms

5  of the Receipt; Welles had no input in the creation of the Receipt.

6  (Welles Decl., ¶ 7.)   The Academy never stated its understanding of

7  the Receipt at any time prior to its execution.   (Id., ¶ 8.)

8  Unlike in Baines, where there was a prior oral agreement, there is

9  no evidence in the instant case, either direct or circumstantial,

10 that the parties came to a mutual understanding about what the

11 Receipt was supposed to reflect.

12      The Court finds that the Academy has not met its burden to

13 show that Welles knew of or suspected that the Academy made a

14 mistake.

15                    b.    The Parties' Intent

16      In order for a court to reform a contract, there must a mutual

17 intention of the parties for the reformed contract to express.

18 Welles states in her declaration that she "did not and would not

19 under any circumstances agree to give the Academy a right of first

20 refusal for $1.00 on the **original** statuette awarded to my father."

21 (Welles Decl. ¶ 16 (emphasis in original).)   The Academy asserts

22 that it intended to preclude Welles from selling any Oscar.   (Def's

23 mot. at 1.)   Thus, the Court finds that there was no meeting of the

24 minds, and no mutual intention of the parties on which a reformed

25 contract would be based.

26      In light of the foregoing considerations, the Court denies the

27 Academy's motion and grant Welles's motion for summary judgment on

28 the Academy's reformation claim.

12

1       3.   <u>Declaratory Relief</u>

2          Welles moves for summary judgment on her claim for declaratory

3   relief; both parties move for summary judgment on the Academy's

4   claim for declaratory relief.

5               a.   <u>Plain Language of the Receipt</u>

6          The Court finds that the Receipt is not susceptible to

7   rescission or reformation.  Thus, the Court interprets the contract

8   as a whole.  The predominant rule in contract interpretation is to

9   give effect to the mutual intention of the parties as it existed at

10  the time of contracting, so far as their intention is ascertainable

11  and lawful.  Cal. Civ. Code § 1636; <u>Lemm v. Stillwater Land &</u>

12  <u>Cattle Co.</u>, 217 Cal. 474, 480 (1933); <u>Healy Tibbets Constr. Co. v.</u>

13  <u>Employers' Surplus Lines Ins. Co.</u>, 72 Cal. App. 3d 741, 748 (1977);

14  <u>Bergin v. van der Steen</u>, 107 Cal. App. 2d 8, 13 (1951).  The

15  intention of the parties must be derived from the language of the

16  contract if possible.  <u>Healy Tibbets</u>, 72 Cal. App. 3d at 748;

17  <u>French v. French</u>, 70 Cal. App. 2d 755 (1945).

18         The Receipt that Welles signed in exchange for the duplicate

19  Oscar was drafted by the Academy.  (Academy's Statement of Genuine

20  Issues in Pl's Mot. ("SGI"), ¶ 17.)  The parties did not negotiate

21  the terms of the Receipt, and Welles added no words to the Receipt.

22  (<u>Id.</u>, ¶ 18.)  The bulk of the Receipt is written in the first-

23  person and limits Welles's ability to sell the duplicate statuette

24  without giving the Academy the right of first refusal.  This

25  portion of the Receipt is not in dispute.

26         The addendum below Welles's signature states, "Any member of

27  the Academy who has heretofore received any Academy trophy shall be

28  bound by the foregoing receipt and agreement with the same force

                                   13

1  and effect as though he or she had executed and delivered the same
2  in consideration of receiving such trophy." (Welles Decl., Ex. 2.)
3  This is the clause of the Receipt that is in dispute. This portion
4  is written in the third person and by its terms applies to a
5  "member of the Academy who has heretofore received any Academy
6  trophy." (See id.) The Academy testified that the Receipt was
7  intended to refer to an Oscar winner who had previously "received"
8  an Oscar from the Academy. (SGI, ¶ 23.) It is undisputed that
9  Welles is not and never has been a member of the Academy. (Id.,
10 ¶ 24.) It is also undisputed that she never previously had
11 received an Oscar from the Academy. Interpreting the plain
12 language of the addendum, it does not apply to Welles's original
13 Oscar.

14       The Academy argues that the contract must be interpreted in a
15 manner that gives effect to every part, if reasonably practicable.
16 (Def's Opp. at 17 (quoting Cal. Civ. Code § 1641).) The Court
17 finds that this interpretive rule does not hold much sway in the
18 instant situation. The Receipt that Welles signed is the same form
19 as Academy Award winners sign upon receipt of an Oscar. (First
20 Amended Counter-Complaint, ¶ 7.) The addendum (referring to "[a]ny
21 member of the Academy who has heretofore received any Academy
22 trophy") by its plain terms does not apply to first-time award
23 winners who had not previously received a trophy from the Academy.
24 Accordingly, the Academy's argument that the addendum must be given
25 effect is weakened by the Academy's apparent intention that the
26 addendum not apply to all persons who sign the Receipt. In light
27 of the form nature of the Receipt, and the inapplicability of the
28 addendum to many of the form's signatories, the Court finds that a

14

1 reasonable interpretation of the Receipt does not require that the
2 addendum apply to Welles.

3            b.   The Academy's "Mistake"

4     The Academy does not dispute that the plain language of the
5 addendum does not apply to Welles.  Instead, the Academy argues
6 that because Welles was unique - the replacement Oscar given to her
7 was the first one given to a nonmember who was not the original
8 recipient of the award - the Academy erred and sent Welles a form
9 that did not apply to her.  (Opp. at 12; Davis Decl., ¶ 10.)  The
10 Court determined above that this "mistake" did not give rise to a
11 reformation claim.  The Court finds that this "mistake" does not
12 change the interpretation of the Receipt.

13     Courts presume that a contract, deliberately entered into,
14 expresses the true intent and meaning of the parties.  <u>Burt v. Los</u>
15 <u>Angeles Olive Growers Ass'n</u>, 175 Cal. 668, 675 (1917).  A court
16 will not set aside contractual obligations because one party
17 misunderstood, or failed to read, the contract.  <u>Id.</u>; <u>Hedging</u>
18 <u>Concepts, Inc. v. First Alliance Mortgage Co.</u>, 41 Cal. App. 4th
19 1410, 1421 (1996).  Here, the Academy failed to ensure that the
20 addendum applied to Welles.  The Academy drafted the document, and
21 the Court will not set aside the contract because the Academy
22 failed to review its own form.  Per the Receipt's terms, the
23 addendum does not apply to Welles's original Oscar which she
24 received from her father's estate.  Accordingly, the Court issues
25 declaratory relief on the following terms: the Court finds (1) that
26 the Academy does not have a right of first refusal in Welles's
27 original Oscar; and (2) that Welles has unrestricted property
28

1 rights in the original Oscar, which she may dispose of however she

2 sees fit.

3        4.   <u>The Academy's Remaining Counterclaims</u>

4     Each party seeks summary judgment on the Academy's remaining

5 counterclaims for breach of contract, declaratory relief, and

6 equitable servitude.  The Court denies the Academy's motion for

7 summary judgment on its remaining counterclaims.  The Academy based

8 its argument for its counterclaims on reformation of the Receipt.

9 The Court denies reformation of the receipt, and the remaining

10 claims fail.  In the breach of contract claim, the Academy has not

11 offered evidence to support a finding of judgment in its favor.

12 The Academy has offered evidence that a contract exists between it

13 and Welles, but it has not shown that Welles is bound by the

14 addendum which facially does not apply to her.  Under the

15 unreformed contract, the Academy has not offered evidence to show

16 that Welles failed to perform her part of the bargain.

17     In the declaratory relief claim, the Academy has not offered

18 evidence that shows that it is entitled to a declaration that it

19 may purchase Welles's original Oscar statuette for $1.00.  Absent

20 reformation of the contract, it has not shown that the addendum in

21 the Receipt is applicable to the original Oscar.

22     The Academy also has not offered evidence to indicate that no

23 issue of material fact exists as to the Academy's breach of

24 equitable servitude claim.  As with the other claims, absent

25 reformation of the Receipt, the Academy has not shown that Welles

26 knew of and agreed to the Academy's intended restriction on the

27 original Oscar.

28

1    The Court grants Welles's motion based on its finding that the
2 addendum did not limit Welles's property rights in the original
3 Oscar.  Thus, the Academy did not (and could not) offer evidence
4 that Welles breached the Receipt, that the Academy is entitled to
5 purchase the original Oscar for one dollar, or that Welles held the
6 original Oscar for the Academy.

7 **III. Conclusion**

8    In light of the foregoing considerations, the Court
9 (1) grants summary judgment to Welles on her claim for declaratory
10 judgment,
11 (2) denies summary judgment to Welles on her claim for rescission,
12 (3) grants summary judgment to Welles on the Academy's
13 counterclaims, and
14 (4) denies summary judgment to the Academy on its counterclaims.

15

16

17 IT IS SO ORDERED.

18

19

20 Dated:   3-4-04

DEAN D. PREGERSON
United States District Judge

17